UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COURTNEY BLACK, | : |
| | : Case No. 12 Civ. 7207 |
| Plaintiff, | : ECF Case |
| | : |
| v. | : |
| | : |
| NUNWOOD, INC. and NUNWOOD | : |
| CONSULTING, LTD., | : |
| | : |
| Defendants. | : |
| | : |

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

**DENTONS US LLP**
Brian S. Cousin
Alexis N. Gevanter
1221 Avenue of the Americas, Suite 2500
New York, New York 10020
Tel: (212) 398-5776
Fax: (212) 768-6800
brian.cousin@dentons.com
alexis.gevanter@dentons.com

*Attorneys for Defendants Nunwood, Inc. and Nunwood Consulting, Ltd.*

1

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................... 3

ARGUMENT .............................................................................................................................. 3

I.  Plaintiff's Demand for Attorneys' Fees Is Foreclosed by the Offer of Judgment ..................... 3

II. Plaintiff Improperly Calculates the Loadstar and Fails to Exclude Unnecessary and Unqualified Hours ............................................................................................................ 8

    A.  The Loadstar is Calculated by Taking into Account only Relevant, Necessary Work, as well as Various Approved Case-Specific Considerations .................................................. 8

    B.  Plaintiff's Demand for Attorneys' Fees Should Have Excluded Hours that are Excessive, Redundant, or Otherwise Unnecessary ................................................................ 9

        1.  Plaintiff's Counsel's Time Spent on this Motion for Attorneys' Fees Should Have Been Excluded ............................................................................................................. 10

        2.  Plaintiff's Time Spent on an Abandoned Claim from Her Initial Complaint Should Have Been Excluded............................................................................................ 11

        3.  Plaintiff's Time Preparing and Participating in Mediation Should Have Been Excluded ............................................................................................................. 12

        4.  Plaintiff's Time Considering the Rule 68 Offers of Judgment Should Have Been Excluded ............................................................................................................. 12

    C.  Plaintiff's Time Sheets Are Inadequate, Rendering it Impossible to Make a Complete Inquiry into the Reasonableness of Work Performed ....................................... 12

        1.  Plaintiff's Attempt at Reducing Excess Fees is Flawed and Incomplete ..................... 12

        2.  Plaintiff's Counsel's Pattern of Vague Block-Billing Is a Large Obstacle Preventing Close Scrutiny of Plaintiff's Claimed Fees ................................................................ 13

    D.  Plaintiff's Counsel Grossly Overstaffed this Case and a General Discount Should Be Assessed. .......................................................................................................... 14

III. Plaintiff's Lodestar Calculation is Fatally Flawed. ............................................................. 14

    A.  Plaintiff Fails to Adequately Produce Proof Supporting her Loadstar Figure Because She Does Not Offer Evidence of Objective Rates .................................................. 14

    B.  The Case Law Does Not Justify the Rates Quoted by Plaintiff. ....................................... 16

    C.  Case-Specific Factors Justify a Lower Loadstar, Including Plaintiff's Disregard for Judicial Economy, Relative Lack of Success in the Case, and Overstaffing .................... 16

Defendants Nunwood, Inc. and Nunwood Consulting, Ltd. ("Defendants"), by and through their undersigned counsel, Dentons US LLP, hereby file their Opposition to Plaintiff Courtney Black's ("Plaintiff") Motion for Attorneys' Fees.

## INTRODUCTION

The Court should deny Plaintiff's Motion for Attorneys' Fees in its entirety.  As the Second Circuit held in *Wilson v. Nomura Sec. Int'l, Inc.*, 361 F.3d 86 (2d Cir. 2004), Plaintiff settled any right to attorneys' fees in this case by accepting the Offer of Judgment, which included "any and all costs."

Even aside from the fact that Plaintiff's demand for additional attorneys' fees is completely barred, Plaintiff's demand of $37,980 in attorneys' fees -- 127% of Plaintiff's total recovery of $30,000 through the Offer of Judgment -- is excessive, inappropriate, insufficiently proven, and generally unreasonable, especially in light of the straightforward nature of the case and Plaintiff's limited success.  As set forth in detail below, at least $22,189 -- and likely much more -- of the amount of fees requested by Plaintiff is wholly unreasonable.

Moreover, Defendants should not be penalized for trying to expedite a case, in furtherance of the purpose of the Offer of Judgment rule.

## ARGUMENT

### I. <u>Plaintiff's Demand for Attorneys' Fees Is Foreclosed by the Offer of Judgment</u>

Plaintiff accepted Defendants' Offer of Judgment on the condition that the "sum $30,000.00 shall include any and all recoverable costs."  This language tracks Rule 68.  *See* Fed. R. Civ. P. 68  ("[A] party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued.").

The purpose of Rule 68 is to "encourage settlements and avoid protracted litigation." *Lyons v. Cunningham*, 583 F. Supp. 1147, 1158 (S.D.N.Y. 1983), *citing Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981). It is also consistent with the purpose of fee-shifting provisions because it encourages the plaintiff to seriously consider settlement as an option to "avoid extensive litigation" and to appreciate the "uncertainties of trial." *Id.*

The Supreme Court has held that courts should treat attorneys' fees as costs under Rule 68 when the underlying statute defines costs to include attorneys' fees. *Marek v. Chesny*, 473 U.S. 1, 9 (1985). Plaintiff asserted three causes of action under the New York Labor Law ("NYLL") and two causes of action under the Fair Labor Standards Act ("FLSA") in the Amended Complaint. *See* Exhibit A. The relevant NYLL attorneys' fees provision, § 198(1), includes attorneys' fees as part of costs.[1] NYLL § 198 is titled "Costs, remedies." In the relevant subsection (1-a), which is embedded in the "Costs, remedies" section, a plaintiff may be awarded "all reasonable attorneys' fees." The word "costs" is not mentioned at all in subsection (1-a). In contrast, the only other subsections in the statute, (1-b) and (1-d), specifically state "together with costs and reasonable attorneys' fees." Thus, § 198(1-a) clearly contemplated that for its purposes, attorneys' fees would be defined as part of costs, as opposed to separately from costs.

While the FLSA separately defines costs and attorneys' fees in its relevant attorneys' fees provision (*see* 29 U.S.C. § 216(b) ("The court in such action shall . . . allow a reasonable

---

[1] Oddly, Plaintiff references NYLL § 633(1) in her memorandum of law. Pl. Memo at 4. This section of the NYLL was never asserted in the complaint or at any time during the litigation. To the contrary, Plaintiff explicitly cites NYLL § 198 in her request for fees in the Amended Complaint. *See* Exhibit A. While NYLL § 633(1) is irrelevant to this case, it is notable that Plaintiff restructured the statute via bracketing and the insertion of a comma which has the effect of distorting the meaning . Pl. Memo at 4. Specifically, Plaintiff inserted a comma that does not exist in the statute in "together with costs, all reasonable attorney's fees. . . ." NYLL § 633(1). In fact, the legislative history of this section shows that the legislature intended that attorney's fees be included as costs, as it removed language that otherwise may have separated fees from costs, whereas the previous version read "together with costs and such reasonable attorneys fees as may be allowed by the court." NYLL § 633(1) (2009), *available at* http://codes.lp.findlaw.com/nycode/LAB/19/663.

4

attorneys' fee to be paid by the defendant, and costs of the action")), the New York legislature, which was well aware of the statutory construction of the FLSA, decided to distinguish the New York statute in several ways.

First, as set forth above, they entitled the relevant section "Costs, remedies," whereas the FLSA separately lists costs and attorneys' fees in the title of its analogous section: "Damages; right of action; attorney's fees and costs; termination of right of action."  Furthermore, while, as described above, the NYLL provision embeds the concept attorneys' fees under the definition of costs, the FLSA separately awards costs and attorneys' fees in the relevant text of the statute, stating: "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *See* § 216(b).

While the NYLL and FLSA pursue the same goals, this distinction is consistent with other differences as to remedy and effect between the NYLL and the FLSA.  *See, e.g.*, *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 382 (E.D.N.Y. 2013) (noting that while under the NYLL a prevailing plaintiff can collect both prejudgment interest and liquidated damages, he or she could not collect both under the FLSA) *aff'd sub nom. Gortat v. Capala Bros., Inc.*, 568 F. App'x 78 (2d Cir. 2014)).

The Second Circuit has held that when an Offer of Judgment is accepted  in a case involving two overlapping causes of action, one of which does not award attorneys' fees separately from costs, Plaintiff is not entitled to any additional attorneys' fees.  *See Wilson v. Nomura Sec. Int'l, Inc.*, 361 F.3d 86 (2d Cir. 2004).  Ordinarily, under fee-shifting statutes, "when a plaintiff fails to prove one of two overlapping claims . . . but prevails on the other . . . the plaintiff may recover fees for all the legal work." *Id.* at 90.  As a corollary to this principle,

the Second Circuit held that where (i) a plaintiff alleges multiple overlapping causes of action involving fee-shifting provisions, (ii) the plaintiff accepts a Rule 68 Offer of Judgment that includes a settlement on costs, and (iii) at least one of the causes of action defines attorneys' fees with costs, the plaintiff is limited to the attorneys' fee agreed to in the Offer of Judgment.  This is regardless of whether any of the other claims would separate attorneys' fees from costs if it were the sole cause of action.  *See id.*

This is based on the rationale that by accepting the Offer of Judgment with the imputed knowledge that it covers attorneys' fees for one cause of action, the plaintiff is essentially estopped from trying to untangle his related cause of action and attempt to get double-paid for attorneys' fees.  *See id*.

In *Wilson*, the plaintiff accepted a Rule 68 Offer of Judgment to settle both his Title VII and NYCHRL claims.  *Id.*  Although the plaintiff sued under two different statutes, the Court held that together, they were intertwined as essentially one discrimination claim.  *Id.* at 88.  Title VII includes attorneys' fees within costs, but NYCHRL separates them out.  *Id.*  By accepting the Offer of Judgment, which was "inclusive of costs," the Court held that the plaintiff could not collect twice -- he had already received the fees he declared satisfied through the Offer of Judgment, so he could not also receive additional fees through a subsequent fee application.  *See id.* at 91.

This case is directly on point.  Here, Plaintiff accepted the Offer of Judgment, which included "any and all costs" in relation to her overtime claims, including attorneys' fees under NYLL § 198(1), but now seeks to collect again for the same essential and overlapping claim.

As the Supreme Court has stated, there are cases when "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on

a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete aims." *Hensley v. Eckerhart*, 103 U.S. 424, 435 (1983). This is such a case. In fact, Plaintiff pleads her FLSA and NYLL claims using virtually identical language in the Amended Complaint (*see* Exhibit A).

Furthermore, Plaintiff's counsel's block-billing and lack of specificity in its timesheets reflects the fact that counsel treated the NYLL and FLSA causes of action as one large and intertwined claim. In this context, the Second Circuit's rationale, as expressed in the *Wilson* case, is directly applicable. Plaintiff should not reap a windfall because she figured out that she could accept the Offer of Judgment, which was intended to include attorneys' fees, and then immediately proceed again to demand separate attorneys' fees for the same claim.

Rule 68 is a powerful, but delicate tool and Defendants were careful to phrase it correctly using the language from the Rule. It is clear that when an Offer of Judgment purports to conclusively settle a matter "for a specific amount, *and the complaint contains a claim for attorneys' fees*, the offer will be deemed to have already included attorney's fees." *Johnson v. Seneca Cnty.*, No. 08-CV-6459L, 2011 WL 767705, at *1 (W.D.N.Y. Feb. 28, 2011) (emphasis in original). In *Johnson*, the Offer of Judgment did not even mention covering costs, but the court held that the offer embraced the claims made in the complaint. *Id.* In the present case, since the Plaintiff's complaint repeatedly requested attorney's fees, Pl. Compl. ¶¶ 26, 29, 36, 37, 42, 45, 60, the Offer of Judgment should similarly be deemed to include any attorneys' fees. Furthermore, when "costs" are mentioned in the Offer of Judgment, and the statute does not clearly separate out attorneys' fees from costs, as is the case with the NYLL, then there can be no additional attorneys' fees awarded.

## II. **Plaintiff Improperly Calculates the Loadstar and Fails to Exclude Unnecessary and Unqualified Hours**

Even aside from the fact that Plaintiff's demand for attorneys' fees is fully barred, Plaintiff's fee demand improperly calculates the loadstar and includes unnecessary and unqualified hours, as set forth in detail below.

### A.   The Loadstar is Calculated by Taking into Account only Relevant, Necessary Work, as well as Various Approved Case-Specific Considerations

In evaluating reasonable attorneys' fees under the FLSA's fee-shifting provision, the district court must conduct a two-prong analysis. *Hensley v. Echerhart*, 461 U.S. 424, 433 (1983); *see* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action."). First, the court must decide if the plaintiff is a "prevailing party." *Hensley*, 461 U.S. at 433. Second, the court must determine if the fee claimed by the plaintiff is "reasonable." *Id*. The Second Circuit has warned that this second step is not a straightforward "lodestar" inquiry, but rather one that also "bear[s] in mind *all* of the case-specific variables that we and other courts have identified as relevant . . . ." *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). These variables typically result in decreases to the attorney fee award because only "[w]here a plaintiff has obtained excellent results," should the recovery be "a fully compensatory fee." *Hensley*, 461 U.S. at 435. After all, the goal of fee-shifting is to compensate plaintiffs, not to "produce windfalls to attorneys." *Farrar v. Hobby*, 506 U.S. 103, 115 (1992).

Regardless of ill intent, "[c]ases may be overstaffed, and the skill and experience of lawyers vary widely." *Hensley*, 461 U.S. at 434. The burden therefore rests on the plaintiff to prove her attorneys' relevant hours expended and the reasonableness of the claimed fee. *See*

8

*Allende v. Unitech Design, Inc.*, 783 F.Supp.2d 509, 512 (S.D.N.Y. 2011) ("As the fee applicant, Plaintiffs bear the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed."). Accordingly, it is up to the plaintiff's counsel to exclude "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

The Supreme Court has stressed that the proper way to calculate an award is to first calculate the "presumptively reasonable fee," the loadstar, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Milea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011), *citing Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542 (2010). To determine the presumptively reasonable fee, the Court should look to the "*Johnson* factors" and try to determine what a "paying client would be willing to pay," which should be "the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190; *see Hensley,* 461 U.S. at 429-430.[2] This means that the Court must consider the specifics of the case at hand and apply discounts accordingly.[3] The Supreme Court has further expressed that "the most critical factor is the degree of success obtained" by the plaintiff. *Farrar*, 506 U.S. at 114; *see also Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (noting that the inquiry for "degree of success" is not limited to "whether a plaintiff prevailed on individual claims," but also incorporates "the quantity and quality of relief obtained").

**B.     Plaintiff's Demand for Attorneys' Fees Should Have Excluded Hours that are Excessive, Redundant, or Otherwise Unnecessary**

---

[2] The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Id.* at 430 n.3.

[3] As a technical matter, most exclusions and discounts should be made by the Court while calculating the loadstar figure, not as a deviation therefrom. *Milea*, 658 F.3d at 166-67.

### 1. Plaintiff's Counsel's Time Spent on this Motion for Attorneys' Fees Should Have Been Excluded

Plaintiff is not entitled to the $10,080.50, representing 32.6 hours of time (after reductions of only 1.6 hours of time), spent researching and drafting the Motion for Attorneys' Fees. All of the cases cited by Plaintiff involved situations where the fee application was clearly disputed. In this case, Plaintiff's counsel worked on and filed the fee application without even contacting Defendants to attempt to settle the issue, despite clear guidance from the Supreme Court: "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee. Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

In fact, counsel made extra efforts to serve this motion contemporaneously with their acceptance of the Offer of Judgment and managed to fit 22% of their alleged fees into this last mad scramble. Plaintiff should not be compensated for such time. *See Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979) ("If the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation or grant it sparingly.") *aff'd*, 448 U.S. 122 (1980).

Furthermore, even under Plaintiff's line of cases (Pl. Memo at 11), such requests have nevertheless been scrutinized carefully by courts for reasonableness. In the first case cited by the Plaintiff on this point, *Davis*, the plaintiffs' counsel spent 46% of their time on the fee application. 156 F.R.D. at 560-61. The court halved the award, and merely credited the plaintiffs for cooperating with defendants' request to stay the case earlier. *Id.* at 561. In the second case cited by the Plaintiff on this point, *Trichilo v. Sec'y of Health & Human Servs.*, the Second Circuit awarded a fee to an attorney whose fee application work amounted to 24%, only because

the government had insisted on litigating the underlying dispute despite conceding that it "was not substantially justified." 823 F.2d 702, 707 (2d Cir.) (conditioning the holding on this point within the context of the Equal Access to Justice Act), *supplemented*, 832 F.2d 743 (2d Cir. 1987).  Plaintiff's third case, *Natural Resources Defense Council, Inc. v. Fox*, 129 F. Supp. 2d 666, 675 (S.D.N.Y. 2001), involved fees that were 14% of the amount worked, due in part to a firm being specifically hired to litigate the fee application.  Even in this circumstance, the Court significantly reduced the rates, resulting in a fee reduction.

### 2. Plaintiff's Time Spent on an Abandoned Claim from Her Initial Complaint Should Have Been Excluded

Plaintiff is not entitled to hours spent on a cause of action for "spread of hours wages" under the NYLL.  Plaintiff included this cause of action in the initial Complaint (s*ee* Exhibit B), but abandoned the claim in the Amended Complaint (*see* Exhibit A).  "[P]laintiffs are not entitled to attorneys' fees for time spent on unsuccessful claims." *Grochowski v. Ajet Const. Corp.*, No. 97 CIV. 6269 (NRB), 2002 WL 465272, at *1 (S.D.N.Y. Mar. 27, 2002).  Therefore, the hours worked by Plaintiff's' counsel on researching and drafting the cause of action, as well as the hours worked to delete it and amend the complaint accordingly, should not be compensable.

Because of block-billing, it is impossible to know how much of the legal research and work on the initial complaint involved this abandoned claim.  *See infra*, § II.C.2.  However, it seems that at least $1,474.00 for 5.9 hours of work (including minor reductions by Plaintiff) can be attributed to the amendment of the Complaint (drafting, filing, and service), although it is unclear how many internal conferences related to it.  *See* Plaintiff's Ex. 1, at 4.  It should be noted that "across-the-board reductions are appropriate when 'billing records are voluminous' and

numerous billing entries are in dispute." *Kahlil*, 657 F. Supp. 2d at 476 (granting a 15% reduction due to certain inefficient billing practices).

### 3. Plaintiff's Time Preparing and Participating in Mediation Should Have Been Excluded

Similarly, Plaintiff is not entitled to attorneys' fees for any work in connection with preparing for or participating in the failed mediation, in which Plaintiff refused Defendants' numerous settlement offers. *See* Docket Number 15, "Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Settlement. Referred to Magistrate Judge James C. Francis." *See also Lyons*, 583 F. Supp. at 1159 ("[T]here is no reason to reward an attorney for work necessitated by a mistaken judgment that failed to obtain any additional benefits."). Defendants count at least $4,142.00 in fees for 15 hours attributable to the failed mediation (after Plaintiff's reduction). *See* Pl. Ex. 1, at 5-6.

### 4. Plaintiff's Time Considering the Rule 68 Offers of Judgment Should Have Been Excluded

Plaintiff seeks to be compensated for time spent considering and researching the Rule 68 Offers of Judgment tendered by Defendant. This is unnecessary and redundant. Not only did Plaintiff's counsel research and discuss the option when Defendants sent the first Rule 68 Offer of Judgment, but they then proceeded to again research and discuss when the second Offer came in. Defendants count at least $6,492.50 for at least 20.5 hours attributable to the consideration of the Offers of Judgment. *See* Pl. Ex. 1, at 3, 7-8

## C. Plaintiff's Time Sheets Are Inadequate, Rendering it Impossible to Make a Complete Inquiry into the Reasonableness of Work Performed

### 1. Plaintiff's Attempt at Reducing Excess Fees is Flawed and Incomplete

Although Plaintiff's counsel made a casual attempt at carrying out their duty to exclude unnecessary hours by discounting overlapping conference times and travel time, Plaintiff's

counsel falls far short even by their own standards. Even when considering Plaintiff's own system of charging one hourly rate for internal attorney meetings, Plaintiff's application is wholly inconsistent. In fact, Plaintiff fails to apply such a reduction on at least 21 occasions, the amount of time of which is once again very difficult to discern due to Plaintiff's rampant use of block billing, as highlighted in Exhibit C, which is a marked copy of Plaintiff's time entries that were attached as Exhibit 2 to the Motion for Attorneys' Fees. First, Exhibit C includes highlighted sections in yellow showing the numerous time entries that reference internal communications. Second, Exhibit C includes text boxes pointing to time entries that should have been reduced for double-billing. Due to block-billing, many of these missed reductions cannot be reformed because it is unclear how much time the meetings took up.

> 2. **Plaintiff's Counsel's Pattern of Vague Block-Billing Is a Large Obstacle Preventing Close Scrutiny of Plaintiff's Claimed Fees**

A principal problem is that Plaintiff has engaged in countless examples of block-billing, which has made it "exceedingly difficult . . . to assess the reasonableness of the hours billed." *LV v. New York City Dept. of Educ.*, 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010). Many entries are also vague. For instance, many entries for internal conferences do not specify the topic discussed. Without topics, Defendants cannot adequately dispute whether or not the actions were reasonable, relevant, or necessary. When, like here, block-billing methods frustrate an accurate review of the relevancy of hours, Court's often apply a fair percentage discount. *See id.* at 525-26 ("In such circumstances courts have found it appropriate to cut hours across the board by some percentage."); *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 476 (S.D.N.Y. 2009) ("It is well established that across-the-board reductions are appropriate when 'billing records are voluminous' and numerous billing entries are in dispute.").

As just one example, Aritza Evans's October 11, 2013 entry lists preparation and filing of the summons and complaint. However, "filing, deliver, service of papers, and other secretarial tasks are normally subsumed into an attorneys' overhead expenses, and are therefore not compensable." *Kahlil*, 657 F. Supp. 2d at 477. Because of such block-billing, this Court cannot tell how much time was allocated between preparation and filing.

### D. Plaintiff's Counsel Grossly Overstaffed this Case and a General Discount Should Be Assessed.

Of the 189 total time entries, 133 involve internal conferencing (over 70%). Courts have found this, in itself, unreasonable. *See Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 509 (S.D.N.Y. 2012) (reducing the award, in part, because of excessive internal meetings).

As the Supreme Court warned in *Hensley*, district courts should ignore hours that were not "reasonably expended" because the case was overstaffed. 461 U.S. at 434. The case at hand was a straightforward FLSA/NYLL case that never presented the possibility for considerable damages. Nevertheless, Plaintiff's counsel assigned three partners, a senior associate, two associates and a paralegal to the case, a combined forty-one years of experience, spread over two separate law firms. The sheer number of people working on this case helps explain why there was so much time lost to internal communication. This is plainly unreasonable and excessive.

### III. Plaintiff's Lodestar Calculation is Fatally Flawed.

#### A. Plaintiff Fails to Adequately Produce Proof Supporting her Loadstar Figure Because She Does Not Offer Evidence of Objective Rates

Plaintiff's lodestar calculation is inadequate and does not meet her burden of providing a *prima facie* case for fees. Plaintiff first takes how much each of her attorneys customarily charges personally and compares that figure to the Laffey Matrix and to Dentons counsel. All of these rates are irrelevant. The "presumptively reasonable rate" contemplates as objective a

14

starting point as possible. *Perdue*, 559 U.S. at 552. Plaintiff, however, simply quotes what her attorneys normally charge and the claimed hours expended. Notably, Plaintiff references the Laffey Matrix, but only advises the court to use it for comparison, not as a base rate.

The comparison to what Plaintiff believes to be Dentons LLP's rates is wholly irrelevant. The purpose of the statute is only to encourage capable representation. The use of the loadstar is meant to avoid just these kinds of guideless comparisons. *See Perdue*, 559 U.S. at 552. If anything, this argument shows Plaintiff's counsel's willingness to indulge in inefficiencies such as researching historic billing rates used by SNR Denton (a distinct entity preceding the law firm's 2013 combination and name change) on a significant international matter.

Regardless, the Laffey Matrix is specific to the Washington, D.C. area and the S.D.N.Y. case Plaintiff references only used it to decide that the declared rates of a partner who practiced in D.C. were commercially reasonable. *House v. Wackenhut Servs., Inc.*, No. 10 CIV. 9476 CM FM, 2012 WL 4473291, at *2 (S.D.N.Y. Sept. 27, 2012); *see also Luessenhop v. Clinton Cnty., N.Y.*, 558 F. Supp. 2d 247, 263-64 & n.17 (N.D.N.Y. 2008) (finding no circuit outside D.C. endorsing the Laffey Matrix and explicitly rejecting labor statistical proof for attorneys' fees cases other than EAJA) *aff'd*, 324 F. App'x 125 (2d Cir. 2009). The case is also inappropriate because it concerned payment for attorneys' fees due to a missed deposition where the court was confident that the fee recipient had fully negotiated the attorneys' rate. *Id*. In the present case, the Plaintiff's counsel admittedly took the case on a contingency arrangement only and, thus, the hourly rates are purely hypothetical

The Second Circuit has stressed that the plaintiff cannot simply give the rates the attorneys would like in an affidavit and cite case law; the plaintiff must bring affirmative proof. *See Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209-10 (2d Cir. 2005) ("[T]he fee

applicant has the burden of showing by satisfactory evidence—in addition to the attorneys' own affidavits—that the requested hourly rates are the prevailing market rates." (quotation removed)). Furthermore, the plaintiff needs to show rates based on "similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir.1994); *see Schermerhorn v. Hall*, No. 92 CIV. 4801 (LAP), 1995 WL 494011, at *5 (S.D.N.Y. Aug. 17, 1995) (finding that the plaintiff failed to provide proof of similar rates in the community despite submitting an outside lawyer's affidavit, and finding the Laffey Matrix inapt). This motion, and the documentation in support, is simply inadequate.

### B.     The Case Law Does Not Justify the Rates Quoted by Plaintiff.

While Defendants do not wish to belabor this point, there have been recent cases that would challenge the range and rates Plaintiff asserts to be prevailing in the area, primarily because Plaintiff fails to account for the type of work involved. This case is very straightforward. When confronted recently with a similarly "straightforward" FLSA and NYLL claim, a district court reduced the hourly rates of a partner with five years experience from $350 to $275 and an associate with twelve years litigation experience (three years in the practice area) from $300 to $225. *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 94-95 (E.D.N.Y. 2012) (discussing similar reductions and lower rates awarded). The Court also reduced the rate for paralegals from $125 to $75. *Id.*

### C.     Case-Specific Factors Justify a Lower Loadstar, Including Plaintiff's Disregard for Judicial Economy, Relative Lack of Success in the Case, and Overstaffing

District courts have considerable discretion to take various factors into consideration. As stated earlier, "the most critical factor is the degree of success obtained" by

16

the plaintiff. *Farrar*, 506 U.S. at 114. Plaintiff received only $30,000, which was essentially "nuisance value" to the Defendants because the case would have been far more expensive to try.

Therefore, Defendants proffered a Rule 68 Offers of Judgment in the amount of $22,500 in December 2013, less than two months after the filing of the Complaint, but Plaintiff rejected it. *See McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 495 (6th Cir. 2014) ("[T]here is nothing about a rejected settlement offer that removes it from the broad constellation of factors a trial court may consider in exercising the statute's 'in its discretion' judgment about whether to award fees and, if so, in what amount.").

Plaintiff accepted the next Offer of Judgment -- which was only increased by $7,500 -- almost one year after filing the Complaint. During this time, and for such a marginal benefit to Plaintiff, Plaintiff accrued numerous additional fees that, as explained above, should not be shifted to the Defendants, including approximately $4,142.00 preparing for and participating in the failed mediation, approximately $6,492.50 considering the Offers of Judgment twice, and $10,080.50 on its Motion for Fees.

Plaintiff's complete lack of concern for judicial economy warrants a sharp discount of any requested fees as part of its "success" inquiry. *See Dzugas-Smith v. Southold Union Free Sch. Dist.*, No. 07-CV-3760 JS ARL, 2010 WL 3852003, at *4 (E.D.N.Y. Sept. 27, 2010) (reducing the award by 81.32% because the plaintiff rejected an earlier Offer of Judgment in a weak case). "In such settings, the work performed, and the fees incurred, after a spurned offer do not provide meaningful value to a prevailing party or for that matter to society in general." *McKelvey*, 768 F.3d at 495. Notably, Plaintiff's counsel was hired on a contingency-fee basis, but now seeks to receive an attorneys' fee 127% the size of the judgment. Counsel has not earned such an exceptional result for their client or for themselves.

This case was very straightforward. There was little novelty, it required little skill, and should have required little time and effort over the period concerned. The main issues were factual and discovery was light. Nevertheless, eight different people billed for this work, spanning two separate firms. As noted earlier, Plaintiff's timesheets have a considerable amount of internal communication. Yet despite all the communication, no one seems to have stopped to value the case or reprioritize in consideration of cost. Furthermore, no one seems to have stopped and called Defendants to negotiate before drafting a whole fee application motion, which Defendants must now defend.

The only special considerations Plaintiff attempts to bring up in her favor is that her attorneys "took significant risk" by taking the case on a contingency arrangement and that they could not have insurance to cover possible collections problems. Pl. Memo at 9. These considerations are irrelevant. The aim of fee-shifting is to "enforce the covered . . . statutes, not to provide a form of economic relief to improve the financial lot of attorneys." *Perdue*, 559 U.S. at 552 (quotations removed). The considerations need to be case-specific. While the Court should find a fee that could entice a capable attorney, it should not necessarily be a fee that could fund a law practice capable of wishing to rely on fee-shifting for systematic support.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiff's motion for attorneys' fees in its entirety. In the alternative, the Court should heavily reduce the award requested by Plaintiff by $10,080.50 for time spent preparing the Motion for Attorneys' Fees, $1,474.00 amending the Complaint to delete an unviable claim, $4,142.00 spent preparing for and participating in the failed mediation, and $6,492.50 considering two separate Offers of Judgment, in addition to the twenty-one duplicative time entries that were not reduced by Plaintiff (the amount of which is

difficult for Defendants to discern), and a percentage based on Plaintiff's use of vague block billing, unjustified billing rates, inefficiencies, complete disregard for judicial economy, relative lack of success in the case, and overstaffing.